## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**JENNIFER DAROSA, Individually and
on behalf of others similarly situated,**

      **Plaintiffs,**

**v.**                                  **Case No.  8:10-cv-611-T-30AEP**

**FLORIDA DEFAULT LAW GROUP,
P.L.,**

      **Defendant.**
_____/

## <u>ORDER</u>

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (Dkt. 26) and Plaintiffs' Response in opposition (Dkt. 42).  The Court, having considered the motion and response, and being otherwise advised, concludes that the motion should be denied in part and granted in part.

The Court notes that Priscilla Lewis consented to join as a Plaintiff on April 13, 2010 (Dkt. 7).  The joinder is hereby GRANTED and Priscilla Lewis is considered a party Plaintiff.

### Background

Plaintiffs Priscilla Lewis and Jennifer Darosa allege that they were improperly denied overtime compensation in violation of the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 201 *et seq*.  Defendant Florida Default Law Group, P.L., ("FDLG") moves for summary

judgment on the grounds that Plaintiffs qualified as both "executive" and "administrative" employees, and were therefore exempt from the overtime compensation requirements of the FLSA.

Defendant FDLG is a creditors' rights law firm, with foreclosure litigation comprising the overwhelming majority of its work. FDLG represents banks and other lenders through all stages of the foreclosure process. Upon receiving a foreclosure case, FDLG will file the initial complaint, ensure service of process, submit any necessary motions, and prosecute the case through to judgment. In the event of a favorable ruling, FDLG will also handle the judicial sale of the property and take care of any post-sale issues. FDLG possesses ample resources for its foreclosure litigation business, employing approximately seventy to eighty lawyers and six to seven hundred non-lawyer operational support staff.

At the time that Plaintiffs were employed by Defendant, these six to seven hundred operational support staff were divided into teams or departments, each team being associated with a specific stage of the foreclosure process. For example, FDLG had a team responsible for handling service of process issues, a motions department, and a foreclosure sales team.

The lowest-level employees in these departments, known internally as "performers," were responsible for completing the many clerical tasks necessary to Defendant's foreclosure litigation business. For example, performers in the motions department would pull standard motions forms from company databases and proceed to enter pertinent information regarding the specific foreclosure case that they were handling.

Each group or team of performers had a "foreclosure supervisor" who in turn was managed by more senior individuals.  Foreclosure supervisors are paid a salary and classified as exempt from the FLSA.

Plaintiff Lewis was employed as the foreclosure supervisor of the motions department from January 4, 2009 to April 6, 2009.  She was paid an annual salary of $43,000 and alleges to have worked seven days per week at an average of seventy to eighty-five hours per week.  She had sixteen full-time performers in her unit, with up to twenty additional part-time performers.

Plaintiff Darosa was employed as the foreclosure supervisor of the sales team from December 19, 2008 to October 5, 2009.  She was paid an annual salary of $50,000 and claims to have worked an average of fifty-five to fifty-seven hours per week.  She had nine to fifteen full-time performers in her unit.

Beyond the above-discussed basic description of Plaintiffs' work, the parties disagree on the details of Plaintiffs' job duties.  Their diverging views of Plaintiffs' employment responsibilities will be discussed below.

A.      **Defendant FDLG's Description of Plaintiffs' Job Responsibilities**

FDLG asserts that the primary duty of each Plaintiff was to supervise and manage their respective team of performers.  *Inter alia,* FDLG contends that Plaintiffs were responsible for: (1) distributing work; (2) monitoring and reviewing that work; (3) delivering

feedback and constructive criticism; (4) training; (5) handling performance issues; (6) administering necessary discipline; (7) handling client complaints; (8) developing and implementing policies and procedures to improve the efficiency of the work and the monitoring of the work process; (9) making recommendations for hiring and firing; (10) reviewing and approving time-cards; (11) granting time-off, (12) approving overtime; and; (13) rewarding good work with gift cards and other awards.  In sum, FDLG contends that Plaintiffs were principally responsible for overseeing their respective teams of performers, and that Plaintiffs' primary value to FDLG was their performance of their managing function.

## B.      Plaintiffs' Description of their Job Responsibilities

Plaintiffs contend that they had minimal management and supervisory responsibilities.  Plaintiffs complain that while they were supposedly hired to act as managers, they were in reality little more than salaried performers.  Plaintiffs assert that, due to the excessive workload of FDLG resulting from the severity of the U.S. mortgage crisis, they were given few management responsibilities and were instead tasked with completing the clerical tasks that their short-staffed teams were unable to finish.  As a result, Plaintiffs allege that a significant majority of their time was spent performing the same tasks as the performers that they were allegedly supposed to be supervising.  Plaintiffs assert that they essentially became mere clerical workers, with the many individuals above them in the chain of command effectively taking over their supposedly supervisory role.

## Summary Judgment Standard

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original).  The substantive law applicable to the claimed causes of action will identify which facts are material.  *Id.*  Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor.  *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial.  *Celotex,* 477 U.S. at 324.  The evidence must be significantly probative to support the claims.  *Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990).  "[I]f factual

issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983).   A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990).   However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.,* 881 F.2d 1041, 1045 (11th Cir. 1989).

### Discussion

The FLSA requires that, subject to certain exemptions, employers pay employees time and one half for hours worked beyond 40 hours in a week.  29 U.S.C. §207(a)(1).  Among the available exemptions are the "executive" exemption and the "administrative" exemption. 29 U.S.C. §213(a)(1).  Defendant asserts that both Plaintiffs are exempt under both the executive and administrative exemptions.  FDLG has the burden of proving these exemptions and the Court will narrowly construe the overtime provisions of the FLSA against the employer.  *Hogan v. Allstate Ins. Co.,* 361 F.3d 621, 625 (11th Cir. 2004).

### A.    The Executive Exemption

FDLG asserts that both Plaintiff Lewis and Plaintiff Darosa meet the requirements of the executive exemption and therefore have no rights to overtime compensation.  Under the FLSA, an executive employee is defined as an employee (1) who is "compensated on a salary basis at a rate of not less than $455 per week;" (2) "whose primary duty is management of

the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) who customarily and regularly directs the work of two or more employees, [and]; (4) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight."   29 C.F.R. §541.100(a).

### 1.  The Executive Exemption: Plaintiff Lewis

The Court denies Defendant FDLG's Motion for Summary Judgment against Plaintiff Lewis on the grounds that Plaintiff Lewis was an exempt executive employee.  As the discussion below makes clear, there is a genuine issue of material fact with respect to the second element of the executive employee exemption.

The second element states that the employee's "primary duty" must be the "management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof." 29 C.F.R. §541.100(a).  The term "primary duty" is defined in the regulations as "the principal, main, major or most important duty that the employee performs."  29 C.F.R. §541.700.  Factors to consider "include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.*

The term "management" is defined in the regulations as including such activities as "interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used, [and]; apportioning the work among employees..." 29 C.F.R. §541.102.

Defendant FDLG asserts that Plaintiff Lewis's primary duty was to manage and supervise the performers in her motions unit by, *inter alia,* delegating work, analyzing productivity, ensuring compliance with firm policies and procedures, disciplining performers, reviewing and approving time cards, granting personal leave, approving limited overtime, and recommending changes to firm policies and procedures.  In addition, FDLG points out that Lewis was paid a salary of $43,000, substantially more than the $15.50 per hour performers earned for non-exempt work (assuming a forty hour workweek).  FDLG stresses that Lewis was ultimately responsible for the performance of her team, and that her true value to the company was as a manager and supervisor of her unit.  Hence, FDLG asserts that the Court should find that Plaintiff Lewis's "primary duty" was the management of her motions group.

In her deposition Plaintiff Lewis paints a very different picture of her job responsibilities.  First, she claims that clerical duties such as data entry and data tabulation took up the great majority of her time.  Indeed, she asserts that 85-95% of her time was spent completing the non-exempt work of her performers.  (NOF No. 9).

Second, she contends that she possessed minimal management responsibilities. Towards this end she claims that she *was not allowed* to "hire, fire, train, mentor, or discipline" performers.  (Lewis, 27; Lewis Dep. Dec. 7, 2010 at 38-40; NOF No. 9; Jones, 32-33).  Moreover, she alleges that she was *never* involved in the creation of policies and procedures.  (Lewis, 52-53; Lewis Dep. Dec. 7, 2010 at 37, 46).  In furtherance of this claim she directs the Court to an instance in which she attempted to interpret the dress code and received an email response from her superior telling her "you do not create or change policy, if you need clarification, ask your manager."  (NOF No. 11; Lewis, 58-59).

Lewis states that she was just a "glorified worker" and was not "respected to make any decisions."  (Lewis, 26-27; Lewis Dep. Dec. 7, 2010 at 31-32).  At least one of her subordinates appears to have agreed with her sentiments, stating that she saw Lewis as a manager in "title only" as "nothing came from her."  (Jones, 21).

As discussed above, Lewis claims to have both spent well over 50% of her time engaged in non-exempt activities and to have possessed few managerial powers, including no power to train, no power to mentor or develop employees, no power to discipline, and no

power to hire and fire.[1]  In the final analysis, Plaintiff Lewis's sworn deposition testimony and supporting evidence is sufficient to raise a genuine issue of material fact as to whether or not Lewis's "primary duty" was management.  Taking Plaintiff Lewis's allegations to be true, it is arguable that she was a manager in "name only" and that her "primary duty" was merely to perform clerical tasks assigned by her superiors.  *See Barreto v. Davie Marketplace, LLC,* 2009 WL 1636023 at *3 fn. 1 (11th Cir. June 11, 2009) (citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1269 (11th Cir. 2008)) ("where an employee spends the majority of [her] time on non-exempt work and has admittedly few managerial-type obligations, there is at least a factual question as to whether the non-exempt duties are comparatively more important than the exempt duties.  Such determinations of fact in the face of conflicting evidence are within the exclusive province of a jury.")

The Court concludes that there exists a genuine issue of material fact as to whether or not Plaintiff Lewis's "primary duty" was management.  FDLG's Motion for Summary Judgment against Plaintiff Lewis on the grounds that she qualifies for the executive exemption to the FLSA must therefore be denied as the requirements of the exemption are conjunctive.  Consequently, the Court need not consider whether or not there exists a genuine issue of material fact with respect to the remaining elements of the exemption.

---

[1] While her annual salary of $43,000 was substantially greater than the wages of a non-exempt employee assuming a 40 hour workweek, it is not clear that she was paid "substantially more" than her subordinates.  If she were paid a non-exempt hourly wage of $15.50 and received time and one half overtime compensation, then even assuming her "low-ball" estimate of seventy hours per week, her total annualized compensation would have significantly exceeded $60,000, raising a real question as to whether or not she was paid "substantially more" than FDLG's non-exempt employees.  At any rate, the question of whether or not she was paid substantially more than her subordinates is not dispositive.  *See* 29 C.F.R. §541.107(a).

## 2. The Executive Exemption: Plaintiff Darosa

Upon reviewing the contents of the record in a light most favorable to Plaintiffs, the Court finds that Plaintiff Darosa satisfies all four elements of the executive exemption; therefore, Defendant FDLG is entitled to summary judgment as a matter of law.

Plaintiff Darosa concedes that she meets the salary requirement of the executive exemption; thus, the parties do not dispute that she satisfies the first element of the exemption, and the Court need only consider the three remaining elements.

Darosa will meet the second prong of the exemption if the Court finds that her "primary duty" was the management of FDLG or a department or subdivision thereof. Plaintiffs allege that Darosa primarily performed clerical work, and possessed few management or supervisory responsibilities. Indeed, Darosa claims that she spent only 20% of her time performing duties she believed to be supervisory in nature. While significant, Darosa's claim to have spent well short of 50% of her time performing management-type activities is not dispositive. On the contrary, the regulations make clear that "[e]mployees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." 29 C.F.R. §541.700.

Here, there are indeed "other factors" supporting the conclusion that Plaintiff Darosa's primary duty was management. Among other things, the undisputed record establishes that

Plaintiff Darosa: (1) managed and delegated the daily workflow of her performers; (2) created performance evaluations and reports; (3) discussed performance issues with her subordinates; (4) disciplined performers when necessary, and/or referred them for discipline; (5) handled employee concerns, and/or forwarded such concerns to senior management; (6) helped create and revise procedures; (7) trained performers; (8) participated in performer interviews and made hiring recommendations; (9) reviewed and approved performer timecards, and; (10) handled issues regarding performer absences, tardiness, and breaks. (Darosa 28, 35, 52-54, 58-61, 65-67, 74-75, 77-78, 80, 93, 96-97, Ex. 1-3).

The above-discussed functions are clearly those of "management" under the FLSA. Indeed, the regulations specifically include "interviewing…training…directing the work of employees…maintaining production or sales records for use in supervision or control…handling employee complaints and grievances; disciplining employees; planning the work…[and] apportioning the work among the employees," as activities typically constituting those of "management." 29 C.F.R. §541.102. As the undisputed facts show that Plaintiff Darosa performed all of these functions, the Court finds that she performed "management" activities.

Moreover, given that Darosa was clearly hired to act as a manager of the sales team (Darosa admits as much, *see* Darosa, 22-25, 28-29), that she possessed significant discretion in performing the numerous management functions discussed above, and that her salary of $50,000 was substantially greater than that of her non-exempt performers (assuming a forty

hour workweek), the Court finds that her "principal, main, major or most important duty" was management.  Consequently, the Court finds that the undisputed evidence showing her to have performed a variety of management functions is sufficient to overcome her allegation that only 20% of her time was spent conducting duties that she felt were supervisory in nature.

For the above-stated reasons, the Court finds that Darosa's "primary duty" was the management of her sales team, a "customarily recognized department" of FDLG; thus, Darosa also satisfies the executive exemption's second prong.

Moreover, as the undisputed facts show that Darosa distributed, monitored, and reviewed the work of her nine to fifteen full-time performers, and also trained and disciplined those employees, Darosa additionally satisfies the third element of the exemption. Specifically, the Court finds that Darosa "customarily and regularly direct[ted] the work of two or more employees." 29 C.F.R. §541.100(a).

The fourth and final element of the executive exemption requires that the employee either had "the authority to hire or fire other employees" or the employee's "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees [were] given particular weight."  29 C.F.R. §541.100(a).

Defendant FDLG concedes that Darosa did not have the *sole* authority to hire and/or to fire her subordinates; however, sole authority is not required and the undisputed evidence shows that Darosa's suggestions and recommendations were given particular weight.

As previously discussed, the undisputed record establishes that Darosa participated in performer interviews and made recommendations for hiring.  (Darosa, 54, 96-97, Ex.1, Ex.3).  Moreover, she made recommendations for the creation of new positions (which she believes were partially filled after her termination), had the authority to approve internal transfers, and possessed the discretion to give "incentive rewards" for good work.  (Darosa, 28, 55-57, 60, 96-98, Ex. 2, Ex. 3, Ex. 5).  These undisputed facts make clear that Darosa's "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees" were given "particular weight." 29 C.F.R. §541.100(a).  Accordingly, the Court finds that Darosa also meets the fourth and final element of the executive exemption.

Having considered the facts in a light most favorable to the Plaintiffs, the Court finds that Plaintiff Darosa meets all four requirements of the executive exemption.  As a result, summary judgment must be granted for Defendant FDLG against Plaintiff Darosa on the grounds that Plaintiff Darosa qualifies for the executive exemption of the FLSA.

**B.     The Administrative Exemption**

The FLSA also exempts employees working in a bona fide administrative capacity.

29 U.S.C. § 213.   The Secretary of Labor defines an administrative employee as an

employee:

> (1) Compensated on a salary or fee basis at a rate of not less than $ 455 per week (or $ 380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200.

### 1.   The Administrative Exemption: Plaintiff Lewis

The Court denies Defendant FDLG's Motion for Summary Judgment against Plaintiff

Lewis on the grounds that Plaintiff Lewis was an exempt administrative employee because

there is a genuine issue of material fact with respect to the third element of the administrative

employee exemption.

The third requirement of the administrative employee exemption states that a covered

employee must have the duty to exercise "discretion and independent judgment with respect

to matters of significance."   29 C.F.R. § 541.200.   An individual exercises "discretion and

independent judgment" when they engage in "the comparison and the evaluation of possible

courses of conduct, and act[] or mak[e] a decision after the various possibilities have been

considered." 541.202(a). In order to possess such discretion the employee must have the authority to make "independent choice[s], free from immediate direction or supervision...even if their decisions or recommendations are reviewed at a higher level." 29 C.F.R. § 541.202 (c).

Defendant FDLG claims that Lewis was regularly required to exercise discretion and independent judgment related to matters of significance by, *inter alia,* recommending changes to policies and procedures, delegating work, directing subordinates, analyzing employee productivity, handling problem files and client complaints, and administering necessary discipline.

Plaintiff Lewis asserts that she was *never* involved in the formulation of policies and procedures as she was not allowed "to create or change policy." (Lewis, 27, 58-59; Lewis Dep. Dec. 7, 2010 at 38-40; NOF No. 9; NOF No. 11;Jones, 32-33). Moreover, she contends that she had little delegating authority, and "was not allowed to hire, fire, train, mentor, or discipline" performers. (Casale, 25-26; Lewis, 27; Lewis Dep. Dec. 7, 2010 at 38-40; NOF No. 9; Jones, 32-33). Indeed, she alleges that she was merely a "glorified worker" and was not "respected to make any decisions." (Lewis, 26-27; Lewis Dep. Dec. 7, 2010 at 31-32).

On the contrary, Lewis alleges that she almost exclusively performed tasks requiring little to no use of discretion and independent judgment. Indeed, Lewis claims that 85-95% of her time was spent performing repetitive, recurrent, and routine clerical data-entry and

data tabulation work in furtherance of FDLG's "mass customization" practice.  (NOF No. 9; Casale, 15).

As discussed above, Lewis claims that she possessed strikingly few managerial responsibilities and spent the great majority of her time performing clerical work not requiring the exercise of discretion and independent judgment.  Assuming such allegations to be true, Plaintiff Lewis arguably was a de facto clerical worker, and a manager in name only.  Indeed, at least one subordinate considered her to be a supervisor in "title only" as "nothing came from her."  (Jones, 21).  Given these allegations, a jury could find that Lewis did not regularly exercise discretion and independent judgment with respect to matters of significance.  *See* 29 C.F.R. § 541.202 (e).

Consequently, Plaintiff Lewis has raised a genuine issue of material fact with respect to whether she satisfies the third element of the administrative exemption.  As a result, there is no need to address the other elements and Defendant FDLG's Motion for Summary Judgment against Plaintiff Lewis on the grounds that she qualifies for the administrative exemption must be denied.

## 2. The Administrative Exemption: Plaintiff Darosa

The Court grants Defendant FDLG's Motion for Summary Judgment against Plaintiff Darosa on the grounds that Plaintiff Darosa was an exempt administrative employee.  Upon reviewing the contents of the record in a light most favorable to the Plaintiff, the Court finds

that Plaintiff Darosa satisfies all three elements of the administrative exemption; therefore, Defendant FDLG is entitled to summary judgment as a matter of law.

Because the elements of the administrative exemption are conjunctive, Plaintiff Darosa will not fall within the exemption unless she meets all three requirements. The parties do not dispute that Darosa meets the first (minimum salary) requirement of the exemption; the Court will therefore move on to consider whether or not she satisfies the remaining two.

The second prong of the three-part test asks if the employee's "primary duty" was the "performance of office or non-manual work directly related to the management or general business operations of the employer." 29 C.F.R. § 541.200. The Court has already found that Darosa's "primary duty" was the management of her sales team, work which qualifies as "office or non-manual work." *Id.* The pertinent question therefore becomes whether or not her work was "directly related to the management or general business operations of the employer." *Id.*

According to the regulations, the work of an employee is directly related to management if it is "directly related to assisting with the running or servicing of the business," for example, personnel management tasks. 29 C.F.R. § 541.201 (a-c). Here, Plaintiffs attempt to depict Darosa as a mere clerical worker, a manager in name only; however, as discussed earlier, Darosa performed several management functions including delegating and managing work flow, monitoring job performance, disciplining employees

when necessary (and/or referring them for discipline), recommending changes in policies and procedures, and making hiring recommendations.  (Darosa 28, 35, 52-54, 58-61, 65-67, 74-75, 77-78, 80, 93, 96-97, Ex. 1-3).

In sum, Plaintiff Darosa performed the tasks of personnel management, work which constitutes non-manual work directly related to management policies.  *See Lott v. Howard Wilson Chrysler-Plymouth, Inc.,* 203 F.3d 326, 331-32 (5th Cir. 2000); *Crayton v. Valued Servs. of Ala., LLC,* 737 F. Supp. 2d 1320, 1340-41 (M.D. Ala. 2010).  For the above-stated reasons, the Court finds that Plaintiff Darosa satisfies the second prong of the three-part test for administrative employees.

The third and final requirement of the administrative exemption states that an employee's "primary duty" of management must include "the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200.

Plaintiffs allege that Darosa performed mainly clerical, data entry, and data tabulation tasks, work which does not require the regular use of discretion and independent judgment. Among other things, they cite the fact that Darosa could not create, implement, interpret, or change FDLG's firm-wide policies, and that she lacked the authority to negotiate on behalf of, and/or bind FDLG.  According to Plaintiffs, Plaintiff Darosa spent the great majority of her time performing mere clerical work in support of FDLG's "mass customization" practice. (Casale, 15).

Notwithstanding Plaintiffs' allegations, the Court has already found that Darosa's "primary duty" was the "management" of her foreclosure sales team, due in large part to the undisputed facts showing that Darosa performed numerous management functions while employed at FDLG.  *Inter alia,* the undisputed record shows that she managed and delegated workflow, monitored performance, disciplined employees (and/or referred them for discipline), trained employees, helped to create and revise procedures, and made hiring recommendations.   (Darosa 28, 35, 52-54, 58-61, 65-67, 74-75, 77-78, 80, 93, 96-97, Ex. 1-3).   The fact that Darosa performed so many management and supervisory tasks is dispositive as courts have found that such tasks require the regular use of discretion and independent judgment.  *See Crayton,* 737 F. Supp. 2d at 1340-41 (although the employee alleged that she spent the majority of her time performing the same duties as her subordinates, the Court nonetheless granted summary judgment for the employer finding that the employee regularly exercised discretion and independent judgment in "delegating work, directing her subordinates in their duties, scheduling their hours, [] overseeing the business operations of the store," training, making recommendations for hiring, and disciplining employees or referring them for discipline).   Accordingly, the Court finds that Darosa's undisputed performance of numerous management and supervisory tasks required the regular use of discretion and independent judgment.  Consequently, Plaintiff Darosa satisfies the third and final element of the administrative employee exemption.

Upon viewing the evidence of the record in a light most favorable to Plaintiffs, the Court concludes that Plaintiff Darosa meets all three requirements of the administrative exemption to the FLSA.  Consequently, Defendant FDLG is entitled to summary judgment against Plaintiff Darosa on the grounds that she qualifies for the administrative exemption

It is therefore **ORDERED AND ADJUDGED** that:

1.     Priscilla Lewis is joined as a party Plaintiff in this action.

2.     Defendant FDLG's Motion for Summary Judgment against Plaintiff Lewis on the grounds that Plaintiff Lewis qualifies for the executive exemption of the FLSA is hereby DENIED.

3.     Defendant FDLG's Motion for Summary Judgment against Plaintiff Darosa on the grounds that Plaintiff Darosa qualifies for the executive exemption of the FLSA is hereby GRANTED.

4.     Defendant FDLG's Motion for Summary Judgment against Plaintiff Lewis on the grounds that Plaintiff Lewis qualifies for the administrative exemption of the FLSA is hereby DENIED.

5.     Defendant FDLG's Motion for Summary Judgment against Plaintiff Darosa on the grounds that Plaintiff Darosa qualifies for the administrative exemption of the FLSA is hereby GRANTED.

6.      The Clerk is directed to enter final summary judgment in favor of Defendant

Florida Default Law Group, P.L., and against Plaintiff Jennifer Darosa.

**DONE** and **ORDERED** in Tampa, Florida on August 24, 2011.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**

Counsel/Parties of Record

S:\Odd\2010\10-cv-611.msj 26.wpd